**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

CIELO JEAN "CJ" GIBSON, CLAUDIA SAMPEDRO, JESSICA BURCIAGA and URSULA MAYES,

*Plaintiffs*,

v.

JS MEDIA CORPORATION d/b/a BADOUX CLUB & HOOKAH LOUNGE,

*Defendant.*

Civil Action No.:

**COMPLAINT**

**(Jury Trial Demanded)**

Plaintiffs CIELO JEAN "CJ" GIBSON, CLAUDIA SAMPEDRO, JESSICA BURCIAGA and URSULA MAYES, (collectively, "Plaintiffs"), file this Complaint against JS MEDIA CORPORATION, d/b/a BADOUX CLUB & HOOKAH LOUNGE d/b/a BADOUX CLUB ("Defendant") respectfully allege as follows:

**BACKGROUND**

1. This is an action for damages and injunctive relief relating to Defendant's misappropriation, alteration, and unauthorized publication and use in advertising of images of Plaintiffs, each of whom are well-known professional models, to promote their night club, BADOUX CLUB & HOOKAH LOUNGE located at 802 Main St, Worcester, Massachusetts 01610 (**hereinafter referred to as the "Night Club" or "Badoux Club"**).

2. As detailed below, Defendant's misappropriation and unauthorized use of Plaintiffs' images, photos and likenesses (collectively, "Images") constitutes: a) Violation of §43 of the Lanham Act, 15 U.S.C. §1125 (a)(1)(A) - False Association; b) Violation of §43 of the Lanham Act, 15 U.S.C. §1125 (a)(1)(B) - False Advertising; c) Common Law Right of Privacy; d) Violation of M.G.L. c. 214 § 1B: Right of Privacy; e) Violation of M.G.L. c. 214 § 3A: Unauthorized Use of Individual's Name, Portrait, or Picture; f) Common Law Right of Publicity;

g) Violation of M.G.L. c. 93A § 11: Unfair Trade Practices; h) Defamation; i) Negligence and Respondeat Superior; j) Conversion; k) Unjust Enrichment; and l) Quantum Meruit.

3. In addition to the actual, compensatory, and exemplary damages set forth below, Plaintiffs likewise seek an Order from this Court permanently enjoining Defendant from using any of their Images in any way and through any medium.

**JURISDICTION & VENUE**

4. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiffs have stated claims under the Lanham Act, 15 U.S.C. § 1125(a)(1).

5. This Court has jurisdiction over the state law claims asserted, pursuant to 28 U.S.C. § 1367.

6. Plaintiffs are, and at all times relevant to this action have been, professional models who reside throughout the United States.

7. According to publicly available records, Defendant JS MEDIA CORPORATION, is a corporation formed under the laws of the state of Massachusetts, with its principal place of business located at 21 Jefferson St, Worcester, Massachusetts, 01604. Upon information and belief, JS Media Corporation operates Badoux Club & Hookah Lounge, which is located at 802 Main St, Worcester, Massachusetts 01610.

8. Venue is proper in the United States District Court for the District of Massachusetts because Defendant's principal place of business is located in Worcester, Massachusetts, (Worcester County).

9. A significant portion of the alleged causes of action arose and accrued in Worcester, Massachusetts and the center of gravity for a significant portion of all relevant events alleged in this complaint is predominately located in Worcester, Massachusetts.

///

///

## PARTIES

***Plaintiffs***

10. Plaintiff Cielo Jean "CJ" Gibson ("Gibson") is a well-known professional model, and a resident of Los Angeles County, California.

11. Plaintiff Claudia Sampedro ("Sampedro") is a well-known professional model, and a resident of Miami-Dade County, Florida.

12. Plaintiff Jessica Burciaga ("Burciaga") is a well-known professional model, and a resident of Fulton County, Georgia.

13. Plaintiff Ursula Mayes ("Mayes") is a well-known professional model, and a resident of Orange County, California.

***Defendants***

14. Defendant, JS Media Corporation, is a corporation formed under the laws of the state of Massachusetts and registered to conduct business in Massachusetts. During times relevant to this action, JS Media Corporation operated Badoux Club & Hookah Lounge.

15. Service of process may be perfected upon Defendant JS Media Corporation d/b/a Badoux Club & Hookah Lounge by serving the registered agent for service of process, Joel Suarez, who can be located at 21 Jefferson St, Worcester, MA 01604.

## FACTUAL ALLEGATIONS

16. Each Plaintiff is a well-known professional model who earns her livelihood modeling and licensing her Images to companies, magazines and individuals for the purpose of advertising products and services.

17. Plaintiffs' careers in the modeling industry place a high degree of value on their good will and reputation, which is critical to maximize their earning potential, book modeling contracts, and establish each of their individual brands. In furtherance of establishing, and maintaining, their brands, Plaintiffs are necessarily selective concerning the companies, and brands, for which they model.

18. Each of the Plaintiffs' Images was misappropriated, and intentionally altered, by

Defendant to make it appear that they worked at, endorsed, or were otherwise associated or affiliated with Defendant.

19. In the case of each Plaintiff, this apparent claim was false.

20. Moreover, this misappropriation occurred without any Plaintiff's knowledge, consent, or authorization.

21. No Plaintiff has ever received any remuneration for Defendant's improper and illegal use of their Images, and Defendant's improper and illegal use of Plaintiffs' Images have caused each Plaintiff to suffer substantial monetary damages and harm to reputation.

22. Further, in certain cases Defendant misappropriated Plaintiffs' advertising ideas because the Images they misappropriated came from Plaintiffs' own social media pages, which each Plaintiff uses to market to potential clients, grow their fan base, and build and maintain their brand.

***Plaintiffs' Individual Backgrounds and Careers***

23. Gibson is an American model who enjoys great success in her industry. Gibson was the Import Tuner magazine Model Search winner. Gibson is currently a model for the Falken Drift Team and can be seen at Formula Drift events. Gibson has also appeared in several magazines including FHM, American Curves, Supreme, MuscleMag International, Muscle & Fitness, and Teeze, Gibson has also modeled for the world's largest PWC Engine Re manufacturer, Short Block Technologies, better known as SBT, Inc. in Clearwater, Florida. Gibson appeared in a home workout video called ENVY as a character named Eliana, which stands for the "E" in ENVY. Gibson continues to promote and market a number of different companies' sport and fitness equipment and is in the process of developing her own line of supplements and fitness clothing. Gibson has 71,600 Instagram followers.

24. Upon information and belief, Gibson is depicted in the photo in Exhibit "A" to promote Badoux Club on its Facebook page. This Image was intentionally altered to make it appear that Gibson was either an employee working at Badoux Club, that she endorsed Badoux Club, or that she was otherwise associated or affiliated with Badoux Club.

25. Gibson has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

26. Sampedro is a Cuban born model, mother, and spokeswoman. Sampedro moved to Miami when she was 6 years old and at age 16, was discovered by Elite models. Sampedro has appeared in many catalogues, and magazine editorials. She has a number of cover credits for magazines such as Nine 5 Four, Shock, Face to Face and Mixed. Sampedro is a sponsored model for Nutri Sups Nutrition and is also a spokesmodel and contracted model for Bare Ava. Sampedro has three children and is married to former Green Bay's star defensive end Julius Peppers. Sampedro is in the Social Media Influencers top class with over a million Instagram followers and a further combined 150,000 fans on Facebook and X (formerly known as Twitter).[1]

27. Upon information and belief, Sampedro is depicted in the photo in Exhibit "B" to promote Badoux Club on its Facebook page. This Image was intentionally altered to make it appear that Sampedro was either an employee working at Badoux Club, that she endorsed Badoux Club, or that she was otherwise associated or affiliated with Badoux Club.

28. Sampedro has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

29. Burciaga is a model and a business owner. She is of Mexican, French, and Irish descent. Burciaga began modeling in 2005 when she submitted a few photos to Stuff Magazine. The magazine responded by flying her out to New York for a photo shoot. After Burciaga's first photo shoot, she won Stuff Magazine's, "Neighborhood Knockout," contest. The prize was $5,000, a 4-page spread in the magazine, and an appearance as a ring girl in EA Sports Fight Night

[1] In the modeling world and talent industry (in general), the number of online Instagram "followers", X "followers", and or Facebook "likes" is a strong factor in determining a model's earning capacity.

Round 3 video game. Burciaga's popularity rose quickly and she began appearing in various magazines including Playboy, Maxim, Import Tuner, Modified Mag, Performance Auto & Sound, Show Latina, Lowrider Magazine, and many others. Burciaga was the Playboy Playmate of the Month for February 2009 and has appeared as herself in several episodes of the reality TV series The Girls Next Door. She has various business ventures, including a women's online clothing boutique, www.SailorandSaint.com. Burciaga's social media reach has surpassed 1.4 million followers on Instagram, over 3.2 million Facebook followers, and over 165,000 followers on X (formerly known as Twitter).

30. Upon information and belief, Burciaga is depicted in the photo in Exhibit "C" to promote Badoux Club on its Facebook page. This Image was intentionally altered to make it appear that Burciaga was either an employee working at Badoux Club, that she endorsed Badoux Club, or that she was otherwise associated or affiliated with Badoux Club.

31. Burciaga has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

32. Mayes is a model whose career started when her photos won first place in prestigious photography awards and a spread in Maxim magazine. She is well known as a "suitcase model #5" from the hit game show Deal or No Deal. Mayes has appeared on Minute To Win It, The Tonight Show, and The Jay Leno Show. She has also appeared in campaigns for Coronet Diamonds, Volkswagen, Subaru, Bacardi, Vogue, Elle, In Style, Cosmopolitan, and Marie Claire, to name a few. Mayes is currently a cover model and a star of the game Juiced 2: Hot Import Nights. She has a modeling contract under CESD Talent Agency (Los Angeles, California) as well as Brand Model & Talent Agency (Orange County, California), and as an actress with Abstract Talent Agency. She is also the owner of Freeface Skincare and is a licensed esthetician and professional makeup artist.

33. Upon information and belief, Mayes is depicted in the photo in Exhibit "D" to

promote Badoux Club on its Facebook page. This Image was intentionally altered to make it appear that Mayes was either an employee working at Badoux Club, that she endorsed Badoux Club, or that she was otherwise associated or affiliated with Badoux Club.

34. Mayes has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

***Defendant's Business Activity and Misappropriation***

35. Defendant operates (or operated, during the relevant time period,) a Night Club, where they are (or were) engaged in the business of selling alcohol and food in a sexually charged atmosphere.

36. Defendant owns, operates, and controls Badoux Club's social media accounts, including its Facebook, Twitter, and Instagram accounts.

37. Defendant used Badoux Club's Facebook, Twitter, and Instagram accounts to promote Badoux Club's, and to attract patrons.

38. Defendant did this for their own commercial and financial benefit.

39. Defendant has used, advertised, created, printed, and distributed the Images of Plaintiffs, as further described and identified above, to create the false impression with potential clientele that each Plaintiff either worked at Badoux Club, endorsed Badoux Club, or was otherwise associated or affiliated with Badoux Club.

40. Defendants used Plaintiffs' Images and created the false impression with the public that Plaintiffs worked at or endorsed Badoux Club to receive certain benefits from that false impression, including but not limited to: monetary payments; increased promotional, advertising, marketing, and other public relations benefits; notoriety; publicity; and an increase in business revenue, profits, proceeds, and income.

41. Defendant was well aware that none of the Plaintiffs have ever been affiliated with or employed by Badoux Club, and at no point have any of the Plaintiffs ever endorsed Badoux

Club or otherwise been affiliated or associated with Badoux Club.

42. All of Defendant's activities, including their misappropriation and republication of Plaintiffs' Images, were done without the knowledge or consent of Plaintiffs

43. Defendant has never compensated Plaintiffs for the unauthorized use of Plaintiffs' Images.

44. Plaintiffs have never received any benefit from Defendant's unauthorized use of their Images.

***Standard Business Practices in the Modeling Industry***

45. It is common knowledge in the modeling industry that the hiring of a model for a commercial purpose involves a particularized methodology and process.

46. The fee that a professional model, like each Plaintiff, will receive is negotiated by their agency, and involves consideration of, without limitation, at least the following factors: a) the reputation, earning capacity, experience, and demand of that particular model; b) where and how long the photo shoot takes place; c) where and how the images are going to be used by the client (*e.g.*, company website, social media, television commercials, billboards, or posters), known in the modeling industry as "usage"; and, d) the length of time the rights to use the photos will be assigned, known in the modeling industry at the "term."

47. Most licenses to use a model's image are for one, two, or three year terms; but almost never is there a "lifetime" term.

***Defendant's Misappropriation of Plaintiffs' Images***

48. Defendant was aware that, by using Plaintiffs' Images, they were violating Plaintiffs' right to privacy, Plaintiffs' right of publicity, and creating a false impression to potential customers that Plaintiffs worked at or endorsed Badoux Club.

49. Unauthorized use of Plaintiffs' Images deprives them of income they are owed relating to the commercialization of their Images.

50. In addition, Plaintiffs allege that any the improper unauthorized use of their Images at issue in this case has substantially injured their respective careers and reputations, because of

the negative connotations of false impression of association with Badoux Club.

51. At no point was any Plaintiff ever contacted by any Defendant, or any representative of any Defendant, to request the use of any of Plaintiffs' Images.

52. No Defendant ever obtained, either directly or indirectly, permission to use any of Plaintiffs' Images.

53. No Defendant ever paid any Plaintiff for its use of her Images on any promotional materials, including Badoux Club's website, Twitter, Facebook, or Instagram accounts.

54. Defendants used Plaintiffs' Images without their consent, and without providing remuneration, in order to permanently deprive each of the Plaintiffs of her right to use her Images.

55. Further, Plaintiffs are informed and believe, and thereon allege, that the unauthorized use, display, publication, and commercial exploitation of Plaintiffs' images by Defendant was not openly disclosed to Plaintiff and were not reasonably discoverable through ordinary diligence at the time the subject images were initially posted or published.

**FIRST CAUSE OF ACTION**
**(Violation of §43 of the Lanham Act, 15 U.S.C. §1125 (a)(1)(A) - False Association)**

56. Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

57. Section 43 of the Lanham Act, 15 U.S.C. §1125(a)(1)(A) applies to Defendant, and protects Plaintiffs from the conduct described herein

58. Defendant used Plaintiffs' image in order to create the false impression with the public that Plaintiffs either worked at Defendant's establishment , or endorsed Defendant's businesses. This was done to promote and attract clientele to Defendant's establishment, and thereby generate revenue for Defendant.

59. Thus, this was done in furtherance of Defendant's commercial benefit.

60. Plaintiffs are in the business of commercializing their identity and selling their images to reputable brands and companies for profit. Defendant's customers are the exact

demographic that view Plaintiffs' images in magazines and online. By virtue of Plaintiffs' use of their image and identify to build their brand, they have acquired a distinctiveness through secondary meaning. Plaintiffs' image either suggests the basic nature of their product or service, identifies the characteristic of their product or service, or suggest the characteristics of their product or service that requires an effort of the imagination by the consumer in order to be understood as descriptive. As such, their brand – the reason their clients seek to hire them – is unique in that it is encompassed in their identity, i.e., their persona.

61. Both Plaintiffs and Defendant compete in the entertainment industry, use similar marketing channels and their respective endeavors overlap. They vie for the same dollars from the same demographic consumer group.

62. As such, an unauthorized use of Plaintiffs' image to promote an establishment created an undeniable confusion in Defendant consumers' minds, which lead to competitive injury to Plaintiffs. There is no doubt that Defendant used Plaintiffs' image for advertising purposes, that is to promote their business enterprises, as such, Defendant's unauthorized and unlawful use of Plaintiffs' image and likeness was an existing intent to commercialize an interest in Plaintiffs' image and likeness

63. Defendant's use of Plaintiffs' image, likeness and/or identity constitutes a false designation of the source of origin, sponsorship, approval, or association which have deceived Plaintiffs' fans and present and prospective clients into believing that Defendant's establishment advertisements are endorsed by Plaintiffs, or sponsored, approved or associated with Plaintiffs.

64. Despite the fact that Defendant was at all times aware that Plaintiffs neither worked at, nor endorsed its establishment, nevertheless, they used Plaintiffs' image in order to mislead potential customers as to Plaintiffs' employment at and/or affiliation with Defendant's establishment.

65. Defendant knew that their use of Plaintiffs' image would cause consumer confusion as to Plaintiffs' sponsorship and/or employment at Defendant's establishment.

66. Upon information and belief, Defendant's use of Plaintiffs' image did in fact cause consumer confusion as to Plaintiffs' employment at and/or endorsement of Defendant's businesses, and the goods and services provided by Defendant.

67. As a direct and proximate result of Defendant's actions, Plaintiffs have no control over the nature and quality of the line of products or services provided by Defendant, the nature of the advertisements depicting Plaintiffs' image, likeness and/or identity, or how Plaintiffs' image, likeness and/or identity is being depicted by Defendant.

68. Further, any failure, neglect or default by Defendant will reflect adversely on Plaintiffs as the believed source of origin, sponsorship, approval or association thereof, hampering efforts by Plaintiffs to continue to protect their reputation for high quality professional modeling, resulting in loss of sales thereof and the considerable expenditures to promote their personal modeling services to legitimate mainstream media, all to the irreparable harm of Plaintiffs.

69. Due to Defendant's unauthorized use of Plaintiffs' image, Plaintiffs have been damaged in an amount to be determined at trial.

70. WHEREFORE, Plaintiffs respectfully request that the Court enter a judgment against Defendant and grant actual or compensatory damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendant's unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

///

///

///

**SECOND CAUSE OF ACTION**
**(Common Law Right of Privacy)**

71. Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

72. As set forth hereon, Defendant has violated each Plaintiffs' common law right to privacy under Massachusetts law.

73. Defendant has done so by appropriating each Plaintiff's likeness for commercial purposes without authority or consent.

74. Defendant invaded and violated Plaintiffs' privacy and misappropriated their likeness by publishing their image and likeness on Defendant's website or related social media accounts as part of Defendant's advertising campaign.

75. At all relevant times, Defendant's website and social media accounts were used and operated by Defendant for advertising and trade purposes.

76. Defendant's website and social media accounts were designed to attract business and generate revenue for Defendant.

77. Plaintiffs are informed and believe and hereon allege that the manner in which Defendant posted and publicized their image and likeness in a manner that was hidden, inherently undiscoverable, or inherently unknowable, in that Defendant published their image and likeness on social media threads that, over time, are (for example, but not limited to) "pushed" down in time from immediate visibility.

78. Plaintiffs are further informed and believe and hereon allege that discovery will prove that Defendant republicized Plaintiffs' image and likeness on various occasions, via different mediums, after the initial date of the posting of their image and likeness and through the filing of this complaint.

79. Plaintiffs are informed and believe and hereon allege that Defendant's republication of Plaintiffs' image and likeness was altered so as to reach a new audience and/or promote a different product.

80. Upon information and belief, Defendant's use of

81. Plaintiffs' image and likeness did in fact attract clientele and generate business for Defendant's business.

82. At no point did any Defendant ever receive permission or consent to use any Plaintiffs' Image on their website or social media account.

83. Defendant was at all relevant times aware that they never received any Plaintiffs' permission or consent to use their image and likeness on any website or social media account, or on any other medium, in order to promote its business.

84. At no point did Defendant ever compensate Plaintiffs for its use of their image and likeness.

85. No applicable privilege or authorization exists for Defendant's use of Plaintiffs' image and likeness.

**THIRD CAUSE OF ACTION**
**(Violation of M.G.L. c. 214 § 3A: Unauthorized Use of Individual's Name, Portrait, or Picture)**

86. Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

87. As set forth hereon, each Plaintiff has and had at the time of Defendant's misappropriation a commercial interest in their image, photo, persona and likeness.

88. Within Massachusetts, Defendants used Plaintiffs' image, photo, persona and likeness for advertising, trade, and/or commercial purposes in promotion of their night club.

89. No Plaintiff ever gave Defendant's written consent, authorization, or otherwise granted permission to Defendant to use their image for any advertising purposes, trade purposes, or any commercial purposes, or any other purpose whatsoever.

90. Defendant was at all times aware that no Plaintiff ever authorized Defendant to use their image in advertising.

91. As such, Defendant's misappropriation and publication of each Plaintiffs' image in advertising was knowing and willful.

92. Plaintiffs are further informed and believe and hereon allege that discovery will prove that Defendant republicized Plaintiffs' image and likeness on various occasions, via different mediums, after the initial date of the posting of their image and likeness and through the filing of this complaint.

93. Plaintiffs are informed and believe and hereon allege that Defendant's republication of Plaintiffs' image and likeness was altered so as to reach a new audience and/or promote a different product.

94. Defendant was at all relevant times aware that it never received any Plaintiffs' permission or consent to use their image and likeness on any website or social media account, or on any other medium, in order to promote Defendant's business.

95. At no point did Defendant ever compensate Plaintiffs for its use of their image and likeness.

96. No applicable privilege or authorization exists for Defendant's use of Plaintiffs' image and likeness.

97. In addition to the actual damages suffered by Plaintiffs based on Defendants' violation of this statute and given Defendant's willful and knowing misappropriation and publication of each Plaintiffs' image, Plaintiffs are entitled to treble damages

## FOURTH CAUSE OF ACTION
**(Common Law Right of Publicity)**

98. Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

99. As set forth hereon, each Plaintiff has and had at the time of Plaintiffs' misappropriation a commercial interest in their image, photo, persona and likeness.

100. Said commercial interest was developed by each Plaintiff through their investment of time, effort and money in their career, image, persona and likeness.

101. As set forth herein, Defendant used each Plaintiffs' image and likeness for commercial purposes by using same in Badoux Club's advertising.

102. Defendant did so without any Plaintiffs' consent, written or otherwise.

103. Plaintiffs are further informed and believe and hereon allege that discovery will prove that Defendant republicized Plaintiffs' image and likeness on various occasions, via different mediums, after the initial date of the posting of their image and likeness and through the filing of this complaint.

104. Plaintiffs are informed and believe and hereon allege that Defendant's republication of Plaintiffs' image and likeness was altered so as to reach a new audience and/or promote a different product.

105. Defendant was at all relevant times aware that it never received any Plaintiffs' permission or consent to use their image and likeness on any website or social media account, or on any other medium, in order to promote Defendant's business.

106. At no point did Defendant ever compensate Plaintiffs for its use of their image and likeness.

107. No applicable privilege or authorization exists for Defendant's use of Plaintiffs' image and likeness.

108. In addition, because Defendant's actions in misappropriating Plaintiffs' images and violating their common law right of publicity was willful and outrageous, Plaintiffs are entitled to punitive damages in an amount to be determined at trial.

///

///

**<u>FIFTH CAUSE OF ACTION</u>**
**(Violation of M.G.L. c. 93A § 11: Unfair Trade Practices)**

109. Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

110. Each Plaintiff, at all relevant times, was engaged in the conduct of a trade or commerce, such that they are considered a "business" under M.G.L. c. 93A.

111. As set forth herein, Defendant embarked on a campaign of false and misleading advertising in order to convince potential consumers, including those located in Massachusetts, that Plaintiffs worked for, endorsed, or were otherwise associated or affiliated with Defendant's business.

112. Such methods of advertising were unfair and deceptive, and constituted deceptive and unfair trade practices under Massachusetts law.

113. Defendant's actions occurred primarily and substantially within Massachusetts.

114. Defendant was at all times aware that no Plaintiff was an entertainer at, had contracted to endorse or promote, or was otherwise associated or affiliated with Defendant's business, but nevertheless published each Plaintiffs' image.

115. This was done for Defendant's commercial benefit, and to the detriment of Plaintiffs.

116. Plaintiffs suffered actual money damages by reason of Defendant's unfair and deceptive advertisements by, inter alia, being deprived those monies Defendant should have paid them for their appearance in Defendant's advertisements.

117. In addition to actual damages, and in light of Defendant's knowing, willful and repeated attempts to deceive consumers, Plaintiffs are entitled to treble damages, and attorneys' fees and costs, as provided for under this statute.

118. In addition to actual damages, to Defendant's unfair and deceptive acts may have the effect of causing such loss to each Plaintiffs' business that Plaintiffs are entitled to injunctive relief.

**SIXTH CAUSE OF ACTION**
**(Defamation)**

119. Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

120. As detailed throughout this Complaint, Defendant has published altered image and likeness of Plaintiffs in order to promote their Defendant's business to the general public and potential clientele.

121. Defendant's publication of said image and likeness constitutes a representation that Plaintiffs were either employed by Defendants' business, that they endorsed Defendants' business, or that they had some affiliation with Defendant's business.

122. None of these representations were true.

123. In publishing Plaintiffs' altered image and likeness, it was Defendant's intention to create a false impression to the general public that Plaintiffs worked at or endorsed Defendant's business.

124. Defendant was at least negligent in publishing Plaintiffs' image and likeness because it knew, or should have known, that Plaintiffs were not employed by Defendant's business, had no affiliation with Defendant's business, had not consented to the use of their image and likeness, and had not been compensated for the use of their image and likeness.

125. In the alternative, Defendant published the image and likeness of Plaintiffs with actual malice because it knew that Plaintiffs were not employed by Defendant's business, had no affiliation with or consented to the use of their image and likeness, and had not been compensated for the use of their image and likeness.

126. Despite Defendant's knowledge and awareness of these facts, they nevertheless made the decision to publish Plaintiffs' image and likeness to attract clientele and generate revenue for itself.

127. Defendant's publication of Plaintiffs' image and likeness constitutes defamation under Massachusetts law because said publication falsely accuses Plaintiffs of having acted in a manner – i.e., working as an entertainer and/or endorsing Defendant's business - which would subject each Plaintiff to hatred, shame, obloquy, contumely, odium, contempt, ridicule, aversion, ostracism, degradation, or disgrace, and/or could induce an evil opinion of Plaintiffs in the minds of right-thinking persons, and/or could deprive each Plaintiff of confidence and friendly intercourse in society.

128. Defendant's publication of Plaintiffs' image and likeness likewise constitutes defamation per se under Massachusetts law because said publication would tend to injure each Plaintiff in their trade, business, and profession as a professional model.

129. This is because any company or brand that sought to hire any of the Plaintiffs as a company or brand representative would be less likely to do so upon learning that they were professional entertainers and/or promoting as night club, an inference which Defendant's publication of the image and likeness support.

130. Defendant's publication of Plaintiffs' image and likeness likewise constitutes defamation per se under Massachusetts law because, insofar as said publication falsely portrays each of the Plaintiffs as an entertainer, it imputes unchastity to them.

## SEVENTH CAUSE OF ACTION
**(Negligence and Respondeat Superior)**

131. Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

132. Plaintiffs are further informed and believe and hereon allege that Defendant maintain or should have maintained employee policies and procedures which govern the use of intellectual property, publicity rights, and/or the image and likeness of individuals for promotional and advertising purposes which specifically prevent the unauthorized and non-

consensual use of intellectual property, publicity rights and/or the image and likeness of individuals for promotional and advertising purposes.

133. Further, Defendant should have maintained, or failed to maintain, policies and procedures to ensure that their promotional and/or advertising materials and campaigns were not deceptive or misleading in their advertising practices.

134. Defendant owed a duty of care to Plaintiffs to ensure that their advertising and promotional materials and practices did not infringe on their property and publicity rights.

135. Defendant further owed a duty of care to consumers at large to ensure that its promotional and/or advertising materials and campaigns were not deceptive or misleading in their advertising practices.

136. Defendant breached their duty of care to both Plaintiffs and consumers by failing to either adhere to or implement policies and procedures to ensure that the use of intellectual property, publicity rights, and/or the image and likeness of individuals for promotional and advertising purposes were not unauthorized, non-consensual, or false and deceptive.

137. Defendant further failed to enforce or implement the above-stated policies and/or to communicate them to employees, and/or supervise its employees in order to ensure that these policies, along with Federal and Massachusetts law, were not violated. Defendant breached its duty of care to Plaintiffs and consumers by its negligent hiring, screening, retaining, supervising, and/or training of its employees and agents.

138. Defendant’s breach was the proximate cause of the harm Plaintiffs suffered when their image and likeness were published without their consent, authorization, and done so in a false, misleading and/or deceptive manner.

139. As a result of Defendant’s negligence, Plaintiffs have suffered damages in an amount to be determined at trial.

///

**EIGHTH CAUSE OF ACTION**
**(Conversion)**

140. Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

141. Each Plaintiff is, and at all relevant times was, the exclusive owners of all right, title and interest in their image and likeness, and have property interests thereon.

142. By the conduct detailed above, Defendant converted Plaintiffs' property rights in their image and likeness for their own use and financial gain image and likeness for its own use and financial gain.

143. As a result of Defendant's unlawful conversion of Plaintiffs' image and likeness, and publication of same, Plaintiffs have suffered damages in an amount to be determined at trial.

**NINTH CAUSE OF ACTION**
**(Unjust Enrichment)**

144. Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

145. As set forth in detail above, Defendant published Plaintiffs' image and likeness in order to promote the Defendant's establishment to the general public and potential clientele.

146. Defendant's publication was for the purpose of creating a false impression to the general public that Plaintiffs were either entertainers working at or endorsed the Defendant .

147. Defendant's purpose in publishing Plaintiffs' image and likeness was to benefit commercially due to its purported association with, employment of, and/or endorsement by Plaintiffs.

///

///

**TENTH CAUSE OF ACTION**
**(Quantum Meruit)**

148. Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

149. Plaintiffs are each internationally known models who earntheir livings appearing in, inter alia, commercials, advertisements, and publications on behalf of companies and brands.

150. Companies and brands that choose to hire Plaintiffs compensate them for their appearances.

151. Although Defendant has availed itself of the benefit of being associated with Plaintiffs, and making it appear to potential customers that Plaintiffs worked for, endorsed, or are otherwise affiliated with Defendant's business, Defendant have not compensated Plaintiffs.

**DEMAND FOR JURY TRIAL**

Plaintiffs demand a trial by jury.

**PRAYER FOR RELIEF**

Plaintiffs respectfully request Judgment in their favor and against Defendant as follows:

(a) For actual damages, in an amount to be determined at trial, relating to Plaintiffs' Causes of Action;

(b) For an order permanently enjoining Defendant from using Plaintiffs' Images to promote Badoux Club's ;

(c) For punitive damages and treble damages under the Lanham Act, 15 U.S.C. § 1117;

(d) For all costs and attorneys' fees incurred by Plaintiffs in the prosecution of this Action pursuant to the Lanham Act, 15 U.S.C.§ 1117;

(e) For such other and further relief as the Court may deem just and proper.

PLAINTIFFS,
By their Attorneys,

/s/ Paul Sullivan
Paul Sullivan, # 634466
Sullivan Law Offices, PC
33 Broad Street, Suite 302
Providence, RI 02903
Tel: 401-861-9900
Fax: 401-861-9977
psullivan@psullivanlaw.com

*and*

/s/ John V. Golaszewski
John V. Golaszewski
New York Bar No. 4121091
**THE CASAS LAW FIRM, P.C.**
1325 Avenue of the Americas, 28th Floor
New York, NY 10019
Tel: 855-267-4457
Fax: 855-220-9626
john@talentrights.law
*Pro Hac Vice Application Forthcoming*

Dated: November 9, 2026